UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖

**DALE R. BRODEUR, SR.,**

                        **Plaintiff,**                 **3:02-CV-823**

     **-v-**

**SEAN McNAMEE, WILLIAM BRODEUR, and
NORTHEAST FABRICATORS, LLC.,**

                        **Defendants.**
❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖

**DALE R. BRODEUR, SR., DALE R. BRODEUR, JR.,
and CINDY BRODEUR,**

                        **Plaintiffs,**                **3:02-CV-846**

     **-v-**

**WILLIAM BRODEUR,**

                        **Defendant.**
❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖❖

APPEARANCES:

Office of Ronald Cohen
Ronald Cohen, Esq., of counsel
Suite 31
353 West 56th Street
New York, New York 10019
Attorney for Plaintiffs

Coughlin, Gehart Law Firm
Richard B. Long, Esq., of counsel
P.O. Box 2039
20 Hawley Street
Binghamton, New York 13902-2039
Attorneys for Defendant Sean McNamee

Office of Terence P. O'Leary
Terence P. O'Leary, Esq., of counsel
P.O. Box 177
49 North Street
Walton, New York 13856
Attorney for Defendants William Brodeur and Northeast Fabricators, LLC.

**Hon. Norman A. Mordue, D.J.:**

                        **MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

Presently before the Court are the following motions: (1) motion for summary judgment (Dkt. No. 90) by Sean McNamee, defendant in *Dale R. Brodeur, Sr. v. Sean McNamee, William Brodeur, and Northeast Fabricators*, *LLC*., 3:02-CV-823; (2) motion for summary judgment (Dkt. No. 98) by William Brodeur and Northeast Fabricators, LLC., defendants in the same action, 3:02-CV-823; and (3) motion for summary judgment (Dkt. No. 49) by William Brodeur, defendant in *Dale R. Brodeur, Sr., Dale R. Brodeur, Jr., and Cindy Brodeur v. William Brodeur*, 3:02-CV-846. For the reasons set forth below, the motions are denied.

**BACKGROUND**

In 1989, Fabricated Metals for Electronics, Inc. ("FME"), executed a promissory note personally guaranteed by Dale R. Brodeur, Sr. ("Brodeur, Sr.") and secured by a second mortgage on property owned by FME at 30-35 Williams Street, Walton, New York. Following FME's bankruptcy in 1990, Industrial Metal Fabrications of Delaware County, Inc. ("IMF") purchased FME's assets. Dale R. Brodeur, Jr. ("Brodeur, Jr.") and Cindy Brodeur were IMF's shareholders. William Brodeur was IMF's Secretary.

IMF experienced financial problems, and in early 1997 William Brodeur authored three handwritten documents, dated January 12, 20 and 24, 1997, concerning distribution of IMF's debts and liabilities. The January 12, 1997 writing is William Brodeur's proposal. The January 20, 1997 writing is a "letter of intent" signed by Brodeur, Jr. and Cindy Brodeur indicating their "agreement in principle" to the proposal. The January 24, 1997 document is a proposal to Trinity Capital Corp., IMF's major secured creditor, signed by all four Brodeurs. These writings bear on one of the actions herein, *Dale R. Brodeur, Sr., Dale R. Brodeur, Jr., and Cindy Brodeur v. William Brodeur*, 3:02-CV-846.

Subsequently, at least some of the parties herein signed a typewritten or computer-

generated document dated July 24, 1997 (or possibly July 27, 1997; the handwritten date is unclear) (hereinafter, "the alleged July 1997 agreement"), which is the subject of the other action herein, *Dale R. Brodeur, Sr. v. Sean McNamee, William Brodeur, and Northeast Fabricators, LLC*., 3:02-CV-823.  Pursuant to the alleged July 1997 agreement, certain IMF assets were to be transferred to Northeast Fabricators, LLC. ("Northeast"), and Northeast was to satisfy certain IMF debt.  William Brodeur and Sean McNamee were principals of Northeast.  The alleged July 1997 agreement set forth mutual general releases and also provided that "Northeast hereby agrees to hold Dale R. Brodeur, Sr. and IMF harmless from any liability in connection with all indebtedness secured by mortgages upon the premises at 35 Williams Street, Walton, New York."  Through assignments, FME's promissory note (guaranteed by Brodeur, Sr.) was transferred to Northeast, and then to Sean McNamee.  It appears that on March 29, 2000, IMF was dissolved by the New York Secretary of State for nonpayment of taxes.

In July 2000, Brodeur, Sr. and others commenced an action in New York State Supreme Court, Delaware County, *Brodeur, et al. v. Hayes*, *et al.*, Index. No. 2000-532.  In that action, Brodeur, Sr. claimed, *inter alia*, that William Brodeur, Sean McNamee and Northeast had schemed to take over the assets and business opportunities of IMF and that William Brodeur had engaged in self-dealing and otherwise breached his fiduciary duties as an officer of IMF.  Sean McNamee interposed a counterclaim in that action seeking judgment on Brodeur, Sr.'s guarantee of the FME note.  Sean McNamee moved for summary judgment on the counterclaim.  In opposition to the motion, Brodeur, Sr. asserted the defense of release.  Specifically, Brodeur, Sr. contended that the alleged July 1997 agreement was valid and enforceable, and that the provisions of that agreement released him from his obligation on the guarantee.

In a decision in the New York action, dated January 18, 2002, Hon. Patrick D. Monserrate, Justice of the Supreme Court, Delaware County, New York, treated the alleged July

1997 agreement as valid and held that Brodeur, Sr. had waived the affirmative defense of release by failing to plead it.[1]  Accordingly, Judge Monseratte granted summary judgment to Sean McNamee on his counterclaim on the guarantee.  Sean McNamee thereafter entered judgment against Brodeur, Sr. in New York and moved to enforce the judgment in North Carolina, where Brodeur, Sr. resided.  In August 2002, in furtherance of his enforcement efforts, Sean McNamee obtained an "Order Granting Motion to Enforce" in the General Court of Justice, Superior Court Division, New Hanover County, State of North Carolina.

On March 25, 2002, Judge Monseratte issued another decision in the New York action.  Among the issues determined, he held that William Brodeur and Northeast had demonstrated as a matter of law that the transfer to them of IMF assets was not a pattern of self-dealing and breach of fiduciary duty, but rather was done in accordance with the handwritten January 12 and 20, 1997 documents, and with the full knowledge and consent of Brodeur, Jr. and Cindy Brodeur, IMF's shareholders.  Judge Monseratte thus granted partial summary judgment to William Brodeur and Northeast dismissing certain claims against them.

In his complaint in this Court in *Dale R. Brodeur, Sr. v. Sean McNamee, William Brodeur,*

---

[1] In his January 18, 2002 decision, Judge Monserrate stated:

> The release alleged here is part of a July 24, 1997 agreement which, defendants assert, was proffered to plaintiffs but rejected. Defendants' attorneys submitted to plaintiffs' then-attorney, Frederick Griffen, a copy of such proposed agreement which had been signed by defendants. However, by letter dated July 29th and copied to Brodeur, Sr., Mr. Griffen represented that Mr. Brodeur, Sr. and IMF refused to sign such agreement. Again on November 13th plaintiffs' substituted counsel sent a letter to William Brodeur and copied to Brodeur, Sr. advising that plaintiffs would not agree to the release proposed in that agreement. Plaintiffs apparently sometime later decided to execute the proposed agreement, without notifying defendants of same. Consequently, Brodeur, Sr.'s assertion of the release as a defense to the guarantee constitutes the sort of surprise which the statute requires be pleaded in the first instance or be waived.

*and Northeast Fabricators*, *LLC*., 3:02-CV-823, filed June 21, 2002, Brodeur, Sr. claims that Sean McNamee breached the alleged July 1997 agreement by entering judgment against Brodeur, Sr. in New York based on Judge Monseratte's January 18, 2002 decision granting summary judgment to Sean McNamee on the guarantee, and by pursuing collection activities in North Carolina based on the New York judgment.  Brodeur, Sr. further claims that by virtue of the alleged July 1997 agreement, William Brodeur and Northeast are bound to defend him from Sean McNamee's claim based on the guarantee and to hold him harmless from Sean McNamee's judgment, but have failed to do so.

In their amended complaint in this Court in *Dale R. Brodeur, Sr., Dale R. Brodeur, Jr., and Cindy Brodeur v. William Brodeur,* 3:02-CV-846, commenced June 26, 2002, Brodeur, Sr., Brodeur, Jr. and Cindy Brodeur sue William Brodeur.  They rely on the three handwritten writings authored by William Brodeur dated January 12, 20 and 24, 1997, concerning distribution of the assets and liabilities of IMF.  Plaintiffs point to Judge Monseratte's March 25, 2002 decision, wherein he treats the three January 1997 papers as constituting the parties' agreement.  Plaintiffs contend that pursuant to that agreement William Brodeur was required to borrow $450,000 and use it to pay IMF's liabilities, with the purpose of freeing IMF's shareholders, Brodeur, Jr. and Cindy Brodeur, from IMF's debt.  Plaintiffs claim that William Brodeur breached that agreement by, *inter alia*, failing to pay IMF's payroll taxes and other payables, thus causing plaintiffs to be "held liable for IMF indebtedness that was to be exonerated under the terms of the agreement."  They also claim that William Brodeur "has enriched himself by use of the assets he took control of under the parties' agreement and without paying consideration to the owners of those assets."

By motion returnable November 6, 2002, Sean McNamee, William Brodeur and Northeast moved this Court to dismiss action 3:02-CV-823 under Fed. R. Civ. P. 12(b)(1) on the ground that

the claims before this Court are, in effect, a challenge to a state court judgment (*i.e.*, Judge Monseratte's grant of summary judgment to Sean McNamee) and are therefore barred by the *Rooker-Feldman* doctrine.[2]  By Memorandum-Decision and Order dated March 14, 2003, this Court denied the motion.[3]

On May 8, 2003, the New York State Supreme Court, Appellate Division, reversed Judge Monseratte's determination that the alleged July 1997 agreement was valid as a matter of law and that Brodeur, Sr. had waived the affirmative defense of release based on that agreement by failing to plead it.  *Brodeur v. Hayes*, 760 N.Y.S.2d 569 (3d Dep't 2003).  The Third Department thus held that Brodeur, Sr. had not waived the defense of release, and that the issue of the validity of the release depended on the resolution of factual issues surrounding the alleged July 1997 agreement.  With respect to the alleged July 1997 agreement, the Third Department stated:

> In July 1997, defendant [Sean McNamee] and defendant William Brodeur, on behalf of Northeast, signed an agreement which contained mutual releases for most of the parties. Plaintiffs' then attorney informed defendant [Sean McNamee] and his attorney that plaintiffs would not sign the agreement. In November 1997, plaintiffs' new attorney informed William Brodeur that plaintiffs would not sign the agreement. At some point, plaintiffs executed the agreement, apparently without notifying defendants. By letter of April 17, 1998, another lawyer for plaintiffs demanded that defendants act in accordance with the executed July 1997 agreement. Defendant [Sean

---

[2] The *Rooker-Feldman* doctrine recognizes that a federal district court lacks the "authority to review final judgments of a state court in judicial proceedings." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482; *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  On March 30, 2005, the Supreme Court decided *Exxon Mobil Corp. v. Saudi Basic Inds. Corp.*, clarifying the reach of the doctrine.  125 S.Ct. 1517 (2005).

[3] In its March 14, 2003 Memorandum-Decision and Order, this Court observed in footnote 5:

> If, however, a New York appellate court ultimately overturns Judge Monserrate's judgment and holds that he erred in precluding Brodeur, Sr. from relying on the July 24, 1997 agreement, Judge Monserrate may be required to address the validity and meaning of that agreement. In that event, district court will likely be called upon to revisit the issue of the applicability of the *Rooker-Feldman* doctrine in the instant action.

> McNamee] expressed shock that the agreement was ever finalized, as he had never previously been informed.
> \*\*\*
> We make no findings regarding the legitimacy of ... [the defense of release or] the validity of the agreement, as those matters must be determined by Supreme Court after a factual inquiry.

760 N.Y.S.2d at 570-71. The effect of the Third Department decision was to reopen the questions of whether the alleged July 1997 agreement was valid and whether Brodeur, Sr. had been released by the alleged agreement from his obligation on the guarantee. In reversing Judge Monseratte's grant of summary judgment to Sean McNamee, the Third Department removed the basis for Sean McNamee's New York judgment against Brodeur, Sr. based on the guarantee.

Thereafter, based on the Third Department's reversal of Judge Monseratte's decision, Brodeur, Sr. moved in North Carolina for relief from Sean McNamee's efforts there to enforce the New York judgment. On July 10, 2003, Hon. Ernest B. Fullwood, Superior Court Judge in North Carolina, granted Brodeur, Sr.'s motion to set aside the "Order Granting Motion to Enforce" and held that Brodeur, Sr. was entitled to complete relief from the operation and enforcement in North Carolina of the New York judgment.

Subsequently, Hon. Ferris D. Lebous, Acting Justice of Supreme Court, Delaware County, New York, denied a further motion by Sean McNamee for dismissal of the state court action. Judge Lebous found questions of fact regarding whether the alleged July 1997 agreement was valid and whether that agreement, if valid, covered Brodeur, Sr.'s guarantee of the promissory note, which was not assigned to Sean McNamee until September 30, 1997.

Sean McNamee now moves to dismiss action 3:02-CV-823 against him. William Brodeur and Northeast move to dismiss the claims against them in action 3:02-CV-823. William Brodeur moves to dismiss action 3:02-CV-846.

## DISCUSSION

**Summary judgment standard**

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). If the nonmovant fails to carry this burden, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323.

**Motions for summary judgment in** *Dale R. Brodeur, Sr. v. Sean McNamee, William Brodeur, and Northeast Fabricators, LLC.***, 3:02-CV-823**

    **1. Motion by Sean McNamee**

Sean McNamee, a defendant in action 3:02-CV-823, moves for summary judgment. In the complaint, Brodeur, Sr. claims that Sean McNamee breached the alleged July 1997 agreement by obtaining a judgment against Brodeur, Sr. based on his personal guarantee and by pursuing collection activity against him in North Carolina. Sean McNamee contends that these claims are now moot. First, he points out that the New York judgment entered upon Judge Monseratte's decision has been vacated as a result of the Third Department's decision. Second, he points out that, also as a result of the Third Department's decision, Hon. Ernest B. Fullwood granted Brodeur, Sr. complete relief from any efforts to enforce the New York judgment in North Carolina. Essentially, Sean McNamee argues that any future judicial resolution of the questions of the validity of the alleged July 1997 agreement and the effect of the release cannot result in an award of damages to any party in this Court but rather, through the application of collateral

estoppel, may result in damages in New York State court.

It would be premature to dismiss all claims against Sean McNamee. If it is ultimately determined that the July 1997 agreement was valid, that it covered Brodeur, Sr.'s guarantee, and that Sean McNamee's conduct in entering judgment in New York and pursuing enforcement of the judgment in North Carolina constituted a breach of his obligations under the agreement, the subsequent vacatur of the judgment and termination of enforcement efforts does not necessarily obviate all damages sustained by Brodeur, Sr. as a result of that breach. Sean McNamee has not demonstrated that Brodeur, Sr. cannot recover any such damages in the context of the instant action. Accordingly, Sean McNamee has not established that he is entitled to judgment dismissing plaintiff's claims against him in 3:02-CV-823. His motion for summary judgment is denied.

**2. Motion by William Brodeur and Northeast**

William Brodeur and Northeast move for summary judgment dismissing the claims against them in action 3:02-CV-823. Brodeur, Sr. alleges that William Brodeur and Northeast breached their obligations under the alleged July 1997 agreement to defend him from Sean McNamee's claim based on the guarantee and to hold him harmless from Sean McNamee's judgment. William Brodeur and Northeast contend that they are not obligated under the alleged July 1997 agreement to hold Brodeur, Sr. harmless with respect to his guarantee because no binding agreement was created and because, in any event, Brodeur, Sr. breached the alleged July 1997 agreement and thus cannot rely upon it.

It is manifest from this Court's review of the record – the judicial decisions, the pleadings, the affidavits, the excerpts from deposition transcripts, and the documents – that material questions of fact exist relative to the validity of the alleged July 1997 agreement. Moreover, even assuming that the agreement is valid, material questions of fact exist regarding the parties'

-9-

performance or nonperformance of their obligations thereunder.

In their motion, William Brodeur and Northeast also incorporate by reference the arguments advanced by Sean McNamee. For the reasons discussed above in the context of Sean McNamee's motion, the Court concludes that the vacatur of Sean McNamee's New York judgment does not necessarily obviate all damages sustained by Brodeur, Sr. as a result of the alleged breaches by William Brodeur and Northeast; thus, William Brodeur and Northeast have not demonstrated that Brodeur, Sr. cannot recover damages in the context of the instant action. They are not entitled to summary judgment in action 3:02-CV-823.

**Motion for summary judgment in *Dale R. Brodeur, Sr., Dale R. Brodeur, Jr., and Cindy Brodeur v. William Brodeur*, 03:02-CV-846**

In their amended complaint in action 3:02-CV-846, Brodeur, Sr., Brodeur, Jr. and Cindy Brodeur claim that William Brodeur breached the alleged agreement comprising the handwritten documents dated January 12, 20 and 24, 1997, by, *inter alia*, failing to pay IMF's payroll taxes and other payables, thus wrongfully causing plaintiffs to be held liable for IMF's indebtedness. In moving for summary judgment, defendant William Brodeur argues that as a matter of law the writings do not constitute a binding contract because there was no meeting of the minds.

In opposition to the motion, plaintiffs contend that it has already been judicially determined that the handwritten documents constitute a binding contract. Plaintiffs rely on Judge Monseratte's March 25, 2002 decision in the state court action dismissing claims that the transfer of IMF assets to defendants William Brodeur and Northeast constituted self-dealing and breach of fiduciary duty on the part of those defendants. In dismissing the claims, Judge Monserrate concluded that the transfer of IMF assets did not reflect wrongdoing, but rather was accomplished with plaintiffs' knowledge and consent based on the handwritten documents of January 12 and 20, 1997. Judge Monserrate refers to these documents as "the January 1997 shareholders'

-10-

Case 3:02-cv-00823-NAM-DEP   Document 114   Filed 01/09/06   Page 11 of 12

agreement."

The dismissal motion before Judge Monserrate did not require him to determine the issues presently before this Court. He relied on the January 12 and 20, 1997 documents as evidence that the IMF assets were transferred with the knowledge and consent of signatories to the January 20, 1997 document; it was not necessary for him to address the binding effect or the precise terms of the documents.[4] Moreover, the documents appear to constitute a "plan" which would necessarily be carried out in a series of steps; Judge Monserrate did not determine whether and at what point any of the parties failed to comply with the plan, thus freeing the others from further compliance. Judge Monserrate's decision is not dispositive of the issues before this Court on this motion.

Factual issues exist regarding the meaning, effect and possible breach of the handwritten January 1997 documents. Summary judgment is denied.

**CONCLUSION**

It is therefore

ORDERED that the motion for summary judgment (Dkt. No. 90) by defendant Sean McNamee in *Dale R. Brodeur, Sr. v. Sean McNamee, William Brodeur, and Northeast Fabricators*, *LLC*., 3:02-CV-823, is denied; and it is further

ORDERED that the motion for summary judgment (Dkt. No. 98) by defendants William Brodeur and Northeast Fabricators, LLC., in *Dale R. Brodeur, Sr. v. Sean McNamee, William Brodeur, and Northeast Fabricators*, *LLC*., 3:02-CV-823, is denied; and it is further

ORDERED that the motion for summary judgment (Dkt. No. 49) by defendant William Brodeur in *Dale R. Brodeur, Sr., Dale R. Brodeur, Jr., and Cindy Brodeur v. William Brodeur*,

---

[4] For example, the January 20, 1997 letter of intent specifies that the monetary amounts are merely "estimated." And the January 24, 1997 letter is a proposal to Trinity Capital Corp., IMF's major secured creditor, not an agreement among the signatories.

3:02-CV-846, is denied.

       IT IS SO ORDERED.

January 9, 2006
Syracuse, New York

Norman A. Mordue
U.S. District Judge